Catron, Judge,
delivered the opinion of the court. The question decisive of this cause depends upon the construction of the annexed bill of sale from John Wright to Henry H. Jones. The deed of gift is inaccurately drawn, yet its plain import is, “that I give to H. H. Jones the slaves, to hold to him and his executors forever; and I also warrant the title, provided, that I hereby reserve the possession, use and labor of said slaves for and during my natural life; and after my death the said H. H. Jones is to have the actual possession, in connexion with his absolute title.”
In 1827, this cause was brought before the court, when it declared, “the court are of opinion, in the language of Mr. Justice Blackstone,thatatrue and perfectgift is always accompanied with delivery of possession, and takes effect *583 immediately, as if A gives to B £100, or a flock of sbeep, and puts him in possession of them directly, it is then a gift executed in the donee, and it is not in the donor’s power to retract it, though he did it without any consideration of recompense. But if the gift does not take effect by delivery or immediate possession, it is then not properly a gift, but a contract. [(2 John. 52; 7 John. 26; 12 John. 188; 10 John. 293; 18 John. 145; 1 Swan. 486; 1 Mad. Rep. 176.”
“They are of opinion, that the instrument of writing of the 10th of August, 1821, between John Wright and Henry Hollinsworth Jones, is not a valid gift of the property mentioned in it, as it does not purport to be a present transfer of the slaves, but proposes to transfer them at some future time, after the death of John Wright, but that it is amere promise or contract to give after his death, without any valuable consideration, and it is consequently of no avail as a gift.”
“Let the judgment of the circuit court be reversed, and the cause remanded to the circuit court for a new trial, with directions to the Judge upon another trial to charge the jury that the instrument of writing, dated 10th August, 1821, between John Wright and Henry H. Jones, relied on by defendant Marley, vested no title in Jones as against a subsequent gift of the negroes therein mentioned.”
The opinion was not satisfactory, and a reargument called for, granted, the cause reargued in 1830, and advised upon.
Nothing is better settled, than that an interest in remainder after an interest for life expires, may be limited in a deed for slaves, and that the first taker for life does not take the entire interest, as was in earlier times the English law, in reference to personal property. This has long ceased to he the law in England. (2 Kent’s Commentaries, 258.
If a trustee had intervened, in whom John Wright had vested the legal title to the slaves, and then reserved to himself their use and possession during his life, remainder to Henry H. Jones, there would not be any embar- *586 ing widowhood, and then to be divided at her discretion amongst his children. She gave one' of the slaves to a daughter, after death. The widow retained the slave during her life.
. The court determined, that the daughter took from the date of the gift, and was entitled to the negro woman given, and her increase born before the death of the widow.
Sarah Neal’s adm’r. vs. Haddock, (2 Hay. Rep. 183,) is in point with the present case. Taylor by deed of gift, gave to his daughter a negro, reserving the use to himself and wife foriife, and the survivor. The daughter married Neal. They bpth died beforé Taylor. After the death of Taylor and wife, a controversy arose between the administrator of Sarah Neal, and the administrator of her father, as to the right of the slave: the court decided, that the daughter was entitled to a remainder of which she did not come into possession during the coverture, and gave judgment for the plaintiff. Of Course, the decision was in favor of the validity of the deed of gift, and that it vested the title in Sarah the daughter of Taylor, although he reserved a life interest in the use of the slave given.
This case followed Whither’s adm’r. vs. Frazier, (1 Hay. Rep. 275,) detinue for a negro. The mother made a deed of gift of the slave to her daughter Sarah, to take effect in possession after the death of the mother. Sarah married and died; then the mother died. The administrator of Sarah sued for and recovered the negro. This decision took place in 1796. It seems in these cases not to have been doubted, but that this gift took effect, although possession did not accompany the deed. Society has grown up in Tennessee under this impression of the law, conformed their acts to it, and it cannot now be disturbed without manifest danger to titles. Upon the same ground was decided the cause of Lewis vs. Potter. (1 Hay. Rep. 234. The English law was, that where A had the interest for a term in a female animal, the property to which she gave birth during the term belonged to the lessee, not the remainderman. But the court decided *587 this was not the rule in reference to female slaves; that the person entitled to the interest in remainder, was entitled to the increase; not because of common law rules, or any decisions of North Carolina, but because by the common consent of the people of North Carolina, evidenced by their acts for a great length of time, this had been recognizc.d as a rule of property that could not with any propriety be then disturbed.
The case of Tims vs. Potter, also decided the main point arising in the one before the court. Glover gave a negro woman to his daughter, reserving the use of the negro during his life. One of his creditors had the negro levied upon and sold. Potter purchased her. After the death of Glover, Tims the husband of the daughter, sued Potter for the slave and her children. There was a verdict and judgment for Tims. His right to recover the woman was not seriously resisted. The main question was as to his right to the children, born during the existence of Glover’s life interest. Judge Haywood tells us this cause was decided three or four years after the war; is a leading case, and governs a vast deal of the property of the country. It confirmed, what as a rule of property, is now sacred in Tennessee, that the increase of female slaves go to the remainderman, although the children be born during the particular estate.
It confirms, what no doubt was when it was decided a rule of property in the transfer of slaves, that possession need not follow the deed, when an interest for life had been reserved to the grantor. Regardless of common law rules, to some extent, yet its correctness has not been drawn in question, it is confidently believed, from that day to this in North Carolina, or at any time in Tennessee, save in the cause before us. (Duncan vs. Self, Mur. Rep. 466.
It is next insisted, that although Jones took an interest in remainder in the slave, the deed was voluntary and void against a subsequent purchaser from Wright. That Wright by parol, agreed in consideration of an intended marriage with Nancy Williams, to convey the slave to her. *588 and after the marriage did convey it, in pursuance of the ' . i ‘i i . ., i • ¶ parol contract, which however, is recited m the trust deed as vesting the title in Boas Matthews for the use of the wife, and that the trustee of the wife takes as a purchaser, and not as a volunteer. Does the wife so take?
The statute of frauds (1801, ch. 25,) tells us, that no action shall be brought to charge any person, upon any agreement made in consideration of marriage, unless the agreement shall be in writing, and signed by the party to be charged.
Aside from such agreement, the deed for the wife’s benefit made after marriage, is voluntary. How then is the deed to Jones attempted to be overruled? By proof of the parol agreement made by John Wright with Nancy Williams before their intermarriage, and in consideration thereof. The proof could not be heard. To admit it, would be to open the door for the frauds and perjuries the statute was intended to cut off. A marries a wife, becomes embarrassed, conveys to a trustee for her, and for his own use, all his property, and then proves a parol agreement before marriage io sustain the deed. No temptation to commit fraud and perjury could be stronger. The deed would be void, and the right rest exclusively upon the parol proof. This court in the leading cause of Patton and M’Clure, rejected the English decisions having a tendency to defeat the statute. We are unwilling in the least to disturb the doctrine established in that cause. But the English authorities are clear, that when the previous parol agreement is not recited in the deed, it is voluntary. (1 P. Wms. 618; 3 Johns. C. C. 489. The deed toNancy Wright was clearly voluntary, and mustbepost-poned to that made to H. H. Jones of previous date. (3 Johns. C. C. 489. Let the judgment be affirmed.
Judgment affirmed.